UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN AYALA,<br><br>                              Plaintiff,<br><br>v.<br><br>W. FERMON, et al.,<br><br>                             Defendant. | Case No.: 14-cv-1794 GPC (JLB)<br><br>**ORDER ADOPTING IN PART REPORT & RECOMMENDATION**<br><br>[Dkt. No. 58] |

Pursuant to 28 U.S.C. § 636, United States Magistrate Judge Jill Burkhardt submitted proposed findings of fact and recommendations for the disposition of Defendant's Motion for Summary Judgment (Dkt. No. 50). Dkt. No. 58. After having reviewed the Report and Recommendation, the moving papers, and the relevant law, the Court accepts the Magistrate Judge's proposed findings of fact and conclusion that Plaintiff failed to exhaust administrative remedies prior to filing suit in federal court. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## 28 U.S.C. § 636 Review

The district court reviews a Magistrate Judge's Report and Recommendation as set forth in 28 U.S.C. § 636(b)(1). "A judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). In the absence of timely objection, however, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note. When no objections are filed, a district court may assume the correctness of the magistrate judge's proposed findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court for N. Dist. of California*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

## PROCEDURAL BACKGROUND

Plaintiff Jonathan Ayala, a former state prisoner currently on parole, filed suit under 42 U.S.C. § 1983 against Defendant W. Fermon, an Officer at Calpatria State Prison.[1] First Amended Complaint, Dkt. No. 8-1. Ayala alleged that Fermon violated his (1) Eighth Amendment right to be free from cruel and unusual punishment and his (2) Fourteenth Amendment right to be from racial discrimination. *Id.* at 3-4.

On April 19, 2016, Defendant Fermon filed a Motion for Summary Judgment asserting that there was no genuine dispute of material fact that Defendant violated Plaintiff's Eighth Amendment right to be free from excessive force or that he violated Plaintiff's Fourteenth Amendment right to equal protection. Def.'s Motion for Summary Judgment ("DMSJ"), Dkt. No. 50-1. Defendant's motion also asserted that Plaintiff's

---

[1] As recognized in the Report & Recommendation, Plaintiff's complaint also alleged § 1983 claims against W.L. Montgomery, Warden at Calpatria State Prison. *See* First Amended Complaint, Dkt. No. 8-1. Defendant Montgomery, however, was dismissed from the case on June 16, 2015. Dkt. No. 26.

suit was barred by qualified immunity and by Plaintiff's failure to exhaust available administrative remedies. *Id.* Plaintiff never filed an opposition to Defendant's motion.[2]

On November 16, 2016, the Magistrate Judge issued a Report and Recommendation granting Defendant's Motion for Summary Judgment.

## BACKGROUND

The Court adopts the Magistrate Judge's unopposed, proposed findings of fact as set forth in the Report & Recommendation and as summarized herein. *See Campbell*, 501 F.2d at 206.

### A. The Prison Riot

The present dispute arises from a prison riot that took place at Calpatria State Prison. Report and Recommendation (R&R), Dkt. No. 58 at 3. On May, 27, 2014, nearly three hundred inmates participated in a fight that erupted between groups of Hispanic and Black prisoners. *Id.* at 4. Defendant Fermon responded to the riot by heading to the scene with a 40-millimeter direct impact launcher and five foam rounds, as required by prison policy and procedure. *Id.* The impact launcher is designed to administer "less-than-lethal" force for the purpose of disabling violent aggressors in prison crowd control situations. *Id.* at 3-4. The foam rounds are designed to distribute the force of impact over a wide area. *Id.*

Upon arrival at the yard, Defendant formed a "skirmish line" with the other correctional officers. *Id.* at 4. He monitored the riot and fired rounds at a number of participants. *Id.* Before Defendant fired each round, he ordered the group of inmates he was targeting to get down. *See id.* Only after they ignored his orders, did he take aim. *See id.* Before targeting Plaintiff, Defendant had fired at a handful of other Hispanic and

---

[2] The Court notes that Plaintiff failed to file an opposition in spite of having received a *Klingele/Rand* Notice informing him of the deadline and requirements for filing an opposition to Defendant's motion. *See* Dkt. No. 52.

Black inmates, hitting some and missing others.³ *Id.* at 4-5. Eventually, Defendant targeted a group of Hispanic inmates fighting with a group of Black inmates 40 yards away. *Id.* at 5. He ordered them to get down, but they ignored his orders. *Id.* Defendant believed that if he did not take action one or more of the inmates would be seriously injured or killed if the fight continued. *Id.* Accordingly, Defendant, who is Black, fired his foam launcher, and the round hit Plaintiff, who is Hispanic, in the face.⁴ *Id.* at 6.

### B. Plaintiff's Injuries & Treatment

Plaintiff was transported to the Palm Springs Desert Regional Medical Center on May 27, 2014. *Id.* at 6. The blow he received to his face fractured his right orbital and left him permanently blind in his right eye. *Id.* at 7. At the time Plaintiff filed his complaint, he indicated that he was still suffering from chronic pain on the right side of his face. *Id.*

Two days later, on May 29, 2014, Plaintiff returned to Calpatria State Prison. *Id.* He stayed in the prison's infirmary and administrative segregation unit from May 29, 2014 to July 22, 2014. *Id.* According to his medical records, he was alert, ambulatory and able to coherently answer questions from medical staff by June 13, 2014. *Id.* On June 14 and 15, 2014 he told prison medical staff that he was "OK." *Id.* On June 18, 22, and 24, 2014, he completed Health Care Services Request Forms, asking for treatment for his eye injury, in legible, comprehensible handwriting. *Id.*

////
////

---

³ That Defendant missed all of the Black inmates whom he targeted, but hit all of the Hispanic targets, led the Magistrate Judge to conclude that there was a genuine factual dispute concerning whether Plaintiff's hit was racially motivated. *See* R&R, Dkt. No. 58 at 17, 19-20. Yet because the Court is granting Defendant's motion for summary judgment based upon nonexhaustion, the Court need not address this genuine dispute of material fact, as it does not speak to exhaustion.

⁴ Whether Defendant intentionally targeted Plaintiff, or whether he inadvertently hit Plaintiff while aiming at a different individual is yet another fact that the R&R found to be genuinely disputed. *See* R&R, Dkt. No. 58 at 5.

### C. Plaintiff's Administrative Appeal

Calpatria's infirmary and administrative segregation units, which housed Plaintiff during his recovery, had procedures in place for inmates to access and file administrative appeal forms. *Id.*

At the infirmary, inmate appeal forms were kept at the correctional officer's station and were made available to inmates upon request. *Id.* An inmate could make such a request by approaching an on-duty correctional officer at the officer's desk or by speaking with an officer making rounds to the various occupants. *Id.* The inmate would then complete the form and place it in a mailbox designated "Inmate-Appeal Mailbox," which was located next to the inmate pay telephones. *Id.* at 7-8. All forms were collected by the first watch's Watch Commander and were delivered to Central Control for retrieval by the prison's Appeals Coordinator's Officer's staff. *Id.* at 8. Inmates also had the option of submitting their appeal forms directly to the Appeals Coordinator's Office via institutional mail. *Id.* Alternatively, if an inmate was bedridden, he or she could request appeal forms by buzzing on-duty medical staff and informing them of the need. *Id.* Once such a request was made, an officer would report to the inmate's bedside, deliver the appropriate form, and later collect the completed form for processing. *Id.*

In the administrative segregation unit, forms were made available to inmates by wheeling a cart containing blank copies, including copies of appeal forms, to each cell every evening. *Id.* The on-duty officer would stop at each cell and ask the occupant whether he or she needed any forms. *Id.* All forms were passed to the inmates through the food port in the cell door. *Id.* Later on in the evening, an officer would stop by each cell in the unit and ask the various occupants whether they had any outgoing mail or forms that needed to be sent through institutional mail. *Id.* The officer would then collect all completed administrative appeal forms and place them in a "mail bag," which was then delivered to the appropriate point of contact. *Id.*

Plaintiff submitted an administrative appeal form that was dated July 20, 2014 and received by the Inmate Appeals Office on July 22, 2014. *Id.* at 8-9. Once received, the

form was forwarded to the prison's Hiring Authority, which determined that the appeal was untimely because it had been filed beyond the 30 days allotted for administrative appeals under the California Department of Correction and Rehabilitation regulations ("CDCR"). *Id.* at 9. Per the CDCR, Plaintiff was required to submit any appeal within 30 days of the prison riot, but instead, submitted his request 55 days after the incident. *Id.* Plaintiff's appeal was subsequently cancelled and he was informed of the decision in a letter dated August 11, 2014. *Id.*

On August 26, 2014, Plaintiff wrote a letter to Warden W.L. Montgomery requesting that his appeal be processed because "extraordinary circumstances" beyond his control prevented him from timely filing his appeal. *Id.* According to Plaintiff's complaint, those "extraordinary circumstances" consisted of the fact that he had been in the hospital, the prison infirmary, and the prison administrative segregation unit from May 27, 2014 through July 22, 2014, that he could not see, and that his medication slowed him down. *Id.* The next day, Chief Deputy Warden B. Hedrick responded to Plaintiff's request by indicating that Plaintiff's appeal would remain canceled because inmate appeal forms were available to Plaintiff in both the infirmary and the administrative segregation unit and, therefore, Plaintiff had no excuse for failing to timely appeal. *Id.* Plaintiff also submitted his appeal to the CDCR Office of Appeals in Sacramento. *Id.* After receiving the appeal on October 10, 2014, the Office of Appeals wrote a letter to Plaintiff, dated October 28, 2014, notifying Plaintiff that he could not resubmit his appeal because it had been canceled at a lower level of review. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers courts to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Defendant moved for summary judgment on the following grounds: 1) that he did not violate Plaintiff's Eighth Amendment rights; 2) that he did not violate Plaintiff's Fourteenth Amendment rights; 3) that qualified immunity shielded him from civil damages; and 4) that Plaintiff's failure to exhaust administrative remedies prevented the

filing of the present suit. DMSJ, Dkt. No. 50-1. The Magistrate Judge rejected Defendant's first two arguments because she concluded that genuine issues of fact concerning whether, and for what reasons, Defendant targeted Plaintiff prevented a finding of summary judgment. R&R, Dkt. No. 58 at 11-24. Ultimately, however, the Magistrate Judge granted Defendant's motion because she determined that Defendant was entitled to qualified immunity and that Plaintiff had failed to exhaust available administrative remedies. *Id.* at 20-28.

After having reviewed the Magistrate Judge's proposed findings and conclusions, the Court agrees that Defendant's motion for summary judgment should be granted based upon Plaintiff's failure to exhaust administrative remedies. Because exhaustion is a prerequisite for filing suit, the Court does not address the Magistrate Judge's other findings and conclusions.

**A. Statutory Exhaustion**

The exhaustion requirement of 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995, is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). It provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This mandatory language prohibits courts from finding a "special circumstances" exception to the exhaustion requirement. *See Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). The only limit to the PLRA's exhaustion mandate is "the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."" *Id.* "To be available, a remedy must be available "as a practical matter"; it must be "capable of use; at hand."" *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).

It is the Defendant's burden to plead and prove nonexhaustion as an affirmative defense. *Albino*, 747 F.3d at 1172. A defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.*

at 1172.  Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  *Id.* at 1166.

### B.  Exhaustion under the CDCR

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  The relevant rules governing exhaustion are not defined by the PLRA, "but by the prison grievance process itself."  *Jones v. Block*, 549 U.S. 199, 219 (2007).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust.""  *Id.*; *see also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements "define the boundaries of proper exhaustion.").

Title 15 of the California Code of Regulations provides that an inmate must submit any appeal within 30 calendar days of the occurrence of the event or decision being appealed.  Cal. Code Regs. tit. 15, § 3084.8(b)(1).  The appeal must be submitted on a CDCR form 602 and must describe the material adverse action or condition that he or she seeks to appeal and the specific relief requested.  DMSJ, Dkt. No. 50-1 at 29 (citing Cal. Code Regs. tit. 15, § 3084.2(a)(1) and P. Nava Decl., ¶ 4).  An appeal may be cancelled if the appeal is submitted beyond the administrative deadline and if the inmate had the "opportunity to submit within the prescribed time constraints."  *Id.* § 3084.6(c)(4); *see also Marella*, 568 F.3d at 1027 (the appeals coordinator can only reject an appeal if time limits are exceeded and the appellant had the opportunity to file within the time constraints).

### C.  Analysis

The Magistrate Judge correctly determined that Defendant is entitled to summary judgment because Plaintiff failed to exhaust administrative remedies.  To properly

exhaust, Plaintiff was required to submit his appeal within 30 calendar days of the event that precipitated his appeal. *See* Cal. Code. Regs. tit. 15, § 3084.8(b)(1); *see also Woodford*, 548 U.S. at 92. The prison riot occurred on May 27, 2014, but Plaintiff did not file an appeal until July 22, 2014, nearly 55 days after the relevant event. Accordingly, Plaintiff failed to comply with the agency's deadline.

The prison's Hiring Authority correctly rejected Plaintiff's untimely appeal. Defendant has submitted ample evidence demonstrating that Plaintiff had the opportunity, "as a practical matter" *see Albino*, 747 F.3d at 1172, to apply for an administrative remedy. As indicated by the Magistrate Judge, Correctional Lieutenants Jimenez and Trujillo offered undisputed declarations stating that administrative appeal forms were readily available to the Plaintiff while he was housed in the infirmary and in the administrative segregation units. R&R, Dkt. No. 58 at 27. Plaintiff, by not responding to Defendant's Motion for Summary Judgment, has failed to rebut this evidence in any way. As such, Plaintiff has failed to meet his burden and Defendant, having produced evidence demonstrating that an administrative remedy was available to Plaintiff, is entitled to summary judgment. *See Albino*, 747 F.3d at 1172; *Marella*, 568 F.3d at 1028 ("If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies.").

The Court further notes that Plaintiff's assertions in his First Amended Complaint are also not sufficient to undermine Defendant's showing of nonexhaustion. Plaintiff contends that he was not able to file his appeal within the prescribed time limits because he was in the hospital, infirmary, and administrative segregation unit, because he could not see, and because his medication slowed him down. Yet the undisputed declarations of Calpatria correctional officers demonstrates that procedures were in place for Plaintiff to file appeal forms while in the infirmary and administrative segregation unit. Plaintiff's undisputed medical records moreover demonstrate that Plaintiff was capable of filling out paperwork within the administrative deadline. As the Magistrate Judge emphasized, Plaintiff handwrote Health Care Services Request Forms on June 18, 22, and 24, 2014 in

comprehensible and legible print within the 30-day deadline. R&R, Dkt. No. 58 at 27. And finally, Plaintiff has produced no evidence, as is required by *Albino*, indicating that his injuries or medication prevented him from accessing the remedies that were generally made available to him in the infirmary and administrative segregation units. Accordingly, the Court concludes that the undisputed facts, when viewed in the light most favorable to Plaintiff, establish that Plaintiff failed to timely file his administrative appeal and that administrative remedies were made available to him within the prescribed time limits. Therefore, Plaintiff failed to exhaust. *See Marella*, 568 F.3d at 1082.

## CONCLUSION

Plaintiff failed to exhaust the administrative remedies available to him. Defendant's Motion for Summary Judgment is, therefore, **GRANTED.**

Dated: March 2, 2017

Hon. Gonzalo P. Curiel
United States District Judge